# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JERRY WILLIAMSON and
HORACE WINCHESTER,

      Plaintiff,

      v.                                                                          No. 1:18-cv-00432-WJ-SCY

MARC GRANO, as personal representative
of the Estate of CAROL CANTRELL; and
JACK CANTRELL,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING PLAINTIFFS' MOTION TO COMPEL ARBITRATION

THIS MATTER comes before the Court upon Plaintiffs' Motion to Compel Arbitration, filed May 10, 2018 **(Doc. 3)**.  Having reviewed the parties' pleadings and the applicable law, the Court finds that  Plaintiffs' motion is well-taken and, therefore, is GRANTED. In light of the Court's disposition of the motion, no reply is necessary.

## BACKGROUND

This case stems from a wrongful death lawsuit in state court, filed in the County of San Miguel, Fourth Judicial District Court, involving the death of Carol Cantrell.  *See* Doc. 21-1 (state court complaint). Plaintiffs Williamson and Winchester are members/owners of WW Healthcare, L.L.C. which does business as Princeton Place, a skilled nursing facility located in Albuquerque, New Mexico.  On May 9, 2018, Plaintiff Williamson (who is the defendant in the

state court action) filed this independent and separate federal action to compel arbitration of all matters related to the care and treatment that Ms. Cantrell received at Princeton Place.[1]

## I. Factual Background

Ms. Carol Cantrell resided at Princeton Place, a skilled nursing facility, from March 4 to March 8, 2016. On May 24, 2014, Ms. Cantrell designated Josephine Lindsay as her attorney in fact.[2] On March 5, 2016, Ms. Lindsay signed the Resident Admission Agreement ("Admission Agreement") on Ms. Cantrell's behalf and agreed to arbitration pursuant to the Mutual Agreement to Arbitrate Claims ("Arbitration Agreement") included in the Admission Agreement. The Arbitration Agreement is contained within the Resident Admission Agreement that Ms. Lindsay also executed on Ms. Cantrell's behalf to obtain care for Ms. Cantrell at Princeton Place

On March 8, 2016, Carp; Cantrell died from complications of untreated diabetes. After Ms. Cantrell's death, Defendant Marc Grano was appointed as personal representative of her estate. He, along with Jack Cantrell, Ms. Cantrell's brother, brought a wrongful death action in the Fourth Judicial District Court, San Miguel County, New Mexico, suing Plaintiff Jerry Williamson for Ms. Cantrell's allegedly wrongful death from a fatal complication of untreated diabetes.[3]

## II. The Arbitration Agreement and Admission Agreement

### A. <u>The Arbitration Agreement</u>

---

[1] Horace Winchester was added as a plaintiff after the federal lawsuit was filed.

[2] The Court omits references to supporting exhibits which are attached to the parties' pleadings except where considered necessary.

[3] The state court case was originally captioned as: *Marc Grano, as Personal Representative of the Estate of Carol Cantrell, and Jack Cantrell v. WW Healthcare, LLC d/b/a Princeton Place, IPC Healthcare Inc., Cynthia Nielson, Eric Metzler, and Emily Orosco*, Case Number D-412-CV-2018-00061 ("state court action").

The Arbitration Agreement contains a plain language title that is prominently displayed in bold, underlined, and all capital letters, which reads "MUTUAL AGREEMENT TO ARBITRATE CLAIMS." The Arbitration Agreement then states in part:

> It is understood and agreed by Princeton Place (the "Facility) and Cantrell, Carol ("Resident or Resident's Authorized Representative) . . . that any legal dispute, controversy, demand or claim . . . that arises out of or relates to the Resident Admission Agreement or any service or health care provided by the Facility to the Resident, shall be resolved exclusively by binding arbitration . . . in accordance with the American Health Lawyers Association ("AHLA") Alternative Dispute Resolution Services Rules of Procedure which are hereby incorporated into this agreement . . . .

Exhibit 2 at 1. The Arbitration Agreement further states, in bold letters, that

> The parties understand and agree that by entering this Arbitration Agreement they are giving up and waiving their constitutional right to have any claim decided in a court of law before a judge and a jury.

Exhibit 2 at 2. Just above the signature line, the Arbitration Agreement contains the following acknowledgements:

> The Resident understands that (1) he/she has the right to seek legal counsel concerning this agreement, (2) the execution of this Arbitration is not a precondition to the furnishing of services to the Resident by the Facility, and this Arbitration Agreement may be rescinded by written notice to the Facility from the Resident within 30 days of signature. If not rescinded within 30 days, this Arbitration Agreement shall remain in effect for all care and services subsequently rendered at the Facility, even if such care and services are rendered following the Resident's discharge and readmission to the Facility.

Exhibit 2 at 2. Plaintiffs state that neither Ms. Cantrell nor her power of attorney rescinded their consent to the Arbitration Agreement, and Defendants do not dispute this.

The Arbitration Agreement contains language defining "Facility" and identifying who is bound by the agreement, which in turn defines who may seek to enforce the Arbitration Agreement. It defines Facility as:

3

the Facility, and its parent company or companies, its management company or companies, its subsidiary and affiliated entities . . . fiduciaries, administrators, affiliates and agents, employees, and any successors and assigns of any of them.

Exhibit 2 at 1. Second, the Arbitration Agreement binds:

the parties, their successors and assigns, including the agents, employees and servants of the Facility, . . . and all persons who claim they derived through or on behalf of Resident, including that of any . . . executor, administrator, legal representative, or heir of the Resident.

Exhibit 2 at 1. Third, the Arbitration Agreement includes broad language regarding its scope:

This agreement to arbitrate includes, but is not limited to, any claim for . . . breach of contract, fraud or misrepresentation, negligence, gross negligence, malpractice, or any other claim based on any departure from accepted standards of medical or health care or safety whether sounding in tort or in contract.

Exhibit 2 at 1.

      B.     <u>The Admission Agreement</u>

SECTION 31: RESOLUTION OF DISPUTES:
Any legal dispute, controversy, demand or claim (hereinafter referred to as "claim" or "claims") that arises out of or relates to the Resident Admission Agreement or any service or health care provided by the Facility to the Resident, shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the parties, or in the absence of such agreement, at the Facility, in accordance with the American Health Lawyers Association ("AHLA") Alternative Dispute Resolution Service Rule of Procedure for Arbitration, which are hereby incorporated into this agreement and not by lawsuit or resort to court process except to the extent that applicable state or federal law provides for judicial review of arbitration proceedings or the judicial enforcement of arbitration awards.

Doc. 3-3 at 12 ("Section 31"). Defendants note that, unlike the Arbitration Agreement, Section 31 in the Admission Agreement does not contain language making arbitration optional.

## DISCUSSION

The FAA, which governs arbitration provisions contained within a written agreement "evidencing a transaction involving commerce," 9 U.S.C. § 2, governs the Court's interpretation and application of the Arbitration Provision. The FAA's "involving commerce" requirement "is

4

to be broadly construed so as to be coextensive with congressional power to regulate under the Commerce Clause" and is satisfied by "contracts relating to interstate commerce." *Comanche Indian Tribe of Okla*. v. 49, L.L.C., 391 F.3d 1129, 1132 (10th Cir. 2004) (quoted authority omitted). Parties agree that the FAA is applicable to the issues addressed here.

The FAA articulates a strong national policy in favor of arbitration and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983). Section 2 of the FAA places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010). While the FAA favors arbitration agreements, a legally enforceable contract is still a prerequisite for arbitration, and without such a contract, parties will not be forced to arbitrate. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944-45 (1995) (stating that the presumption in favor of arbitration is reversed when there is a dispute as to the existence of an agreement).[4] Thus, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Dumais v. Am. Golf Corp*., 299 F.3d 1216, 1220 (10th Cir. 2002).

There are two types of validity challenges under § 2 of the FAA: (1) one type challenges the validity of the agreement to arbitrate, and (2) the other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole

---

[4] *See Howard v. Ferrellgas Partners, L.P*., 748 F.3d 975, 977 (10th Cir. 2014) (". . . [B]efore the Act's heavy hand in favor of arbitration swings into play, the parties themselves must agree to have their disputes arbitrated") (emphasis in original); *AT&T Techs., Inc. v. Communications Workers of Am*., 475 U.S. 643, 648 (1986) ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (internal quotation marks and citation omitted); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–404 (1967).

contract invalid." *Rent-A-Ctr.,* 561 U.S. at 70-71 (citation omitted). However, only the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable. As a matter of substantive federal arbitration law, "an arbitration provision is severable from the remainder of the contract." *Rent-A-Ctr,* 561 U.S. 73. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate, and even where fraud is alleged as to the whole contract, the basis of the challenge must be directed "specifically to the agreement to arbitrate before the court will intervene," *Id.* at 70-71 (a challenge to the validity of the contract as a whole does not present a question of arbitrability) (cited in *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 229 (3d Cir. 2012); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395 (1967) (agreements to arbitrate are severable from a larger contract and may therefore be separately enforced and their validity separately determined).

## I.     Validity and Enforceability of Delegation Provision

The Supreme Court has recognized "that parties can agree to arbitrate "gateway" questions of "arbitrability," such as "whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent–A–Center*, 561 U.S. at 68–69. A "delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Id.* A federal court must address who should decide arbitrability first, before deciding whether a dispute is arbitrable. *See Belnap v. Iasis Healthcare*, 844 F.3d at 1281("[T]he question of *who* should decide arbitrability precedes the question of *whether* a dispute is arbitrable.") (emphasis in original); *Evangelical Lutheran Good Samaritan Soc'y v. Moreno*, 277 F. Supp. 3d 1191, 1212 (D.N.M. 2017) (Browning, J.). Under the FAA, if a party challenges specifically the

enforceability of a delegation provision, the district court considers the challenge. *Rent-A-Ctr.*, 561 U.S. at 79.

In *Rent-A-Ctr,* the employer sought enforcement of the provision in the arbitration agreement which delegated to the arbitrator the "gateway" question of enforceability (the delegation provision). *Rent-A-Ctr.,* 561 U.S. 63. The employee challenged the validity of the contract as a whole, but nowhere in his opposition to the motion to compel arbitration did he challenge the delegation provision. As a result, the Supreme Court affirmed the district court's conclusion that the delegation provision was valid under §2 of the FAA and must be enforced. As a result, the employee's challenges to the contract—including unconscionability—had to be referred to the arbitrator and not the district court.[5]

Plaintiffs contend that the Arbitration Agreement expresses a specific intent by the parties to submit to an arbitrator the question of whether an agreement to arbitrate exists. Thus, the threshold question in this analysis, even before considering whether the parties have agreed to arbitrate (or *what* they have agreed to arbitrate) is whether parties have agreed as to *who* should decide arbitrability. The Supreme Court has held that "courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *Rent–A–Center, W., Inc. v. Jackson,* 561 U.S. at 78. This is the question the Court must next address.

---

[5] In a lengthy dissent, Justice Stevens, joined by J. Ginsburg, J. Breyer, and J. Sotomayor, agreed with the majority that questions of arbitrability may go to the arbitrator when parties have demonstrated, clearly and unmistakably, that it is their intent to do so, but found that the majority had taken the "severability" rule too far. *See* 561 U.S. at 76 (noting that arbitration provisions "are enforceable apart from the remainder of the contract" when party challenges a contract but not specifically arbitration provisions) (citation omitted). The dissent found that the employee's claim that the arbitration agreement was unconscionable "undermine[d]" any suggestion that the employee "clearly and unmistakably" assented to submit questions of arbitrability to the arbitrator." *Id.*, 561 U.S. at 80-81. As a result, the dissent would have affirmed the majority's ruling but would have reserved the unconscionability claim for the court. *Rent-A-Ctr.*, 561 U.S. at 63. However, this Court is bound by the majority decision in *Rent-A-Ctr.*

Defendants do not specifically challenge the delegation provision; instead, they argue that it does not exist. *See* Doc. 57 at 8 (". . . there is no language to expressly establish who decides the issue of arbitrability").[6] However, Plaintiffs point to language in the AHLA rules which govern the Agreement, supporting their position that the parties clearly and unmistakably intended for issues of arbitrability to be decided by the arbitrator:

(1) First, Rule 3.1 of the AHLA Rules states: "After receiving appropriate evidence and argument, the arbitrator, once appointed, shall have the power to determine his or her jurisdiction *and any issues of arbitrability*." See Exhibit 7, Rule 3.1 (emphasis added);

(2) Second, Plaintiffs point to AHLA Rule 4.1 which states that "an arbitrator has the power to . . . determine his or her own power and to interpret the Rules."

The only question here is whether the language in the AHLA rules evinces a clear and unmistakable intent by the parties to submit to an arbitrator the question whether an agreement to arbitrate exists, and the Court finds that it does. The language distinctly refers to issues of arbitrability as well as the arbitrator's authority to rule on his or her jurisdiction, and clearly encompasses gateway matters of arbitrability and enforcement.

Plaintiffs rely in part on *Belnap v. Iasis Healthcare,* in which the Tenth Circuit concluded that a doctor and medical center had clearly and unmistakably agreed to arbitrate arbitrability of claims, based on the following language from the arbitration rules ("JAMS" rules) which governed the parties' agreement:

---

[6] Defendants' failure to raise a specific challenge to the delegation provision has negative consequences. For example, in *Rent-A-Ctr,* the Supreme Court found that while the employee offered a challenge to the delegation provision—that he was offered a quid pro quo for initially allowing an arbitrator to decide certain gateway questions—the challenge was brought too late in the litigation. 561 U.S. at 75. *Cmp. Evangelical Lutheran Good Samaritan Soc'y v. Moreno*, 277 F. Supp. 3d 1191 (D.N.M. 2017) (provision of nursing home admission agreement which delegated to an arbitrator exclusive authority to resolve any dispute relating to the agreement's enforceability was a valid delegation under the Federal Arbitration Act (FAA), where personal representative of resident's wrongful death estate did not specifically challenge delegation clause) (citing *Rent-A-Ctr*, 561 U.S. at 72 (unless plaintiff challenges delegation provision specifically, court must treat it as valid under § 2 of the FAA and must enforce the provision, "leaving any challenge to the validity of the Agreement as a whole for the arbitrator).

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, *shall be submitted and ruled on by the Arbitrator*. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

*Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017). The court found that the inclusion of arbitration rules containing such language showed an intent by both Dr. Belnap and the medical center to submit matters of arbitrability and enforcement to the arbitrator. The Tenth Circuit in *Belnap* further noted that other jurisdictions have followed suit regarding the incorporation of arbitration rules into arbitration agreement. *Id.* at 1284 ("Most of our sister circuits that have considered this issue agree with our conclusion that an arbitration provision's incorporation of the AAA Rules—or other rules giving arbitrators the authority to determine their own jurisdiction—is a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the court."). Plaintiffs likewise contend here that by incorporating the AHLA Rules into their agreement, Plaintiffs and Defendants agreed that the arbitrator "shall" have the authority to determine jurisdiction and arbitrability, as well as to decide the merits of any claims.

Defendants ignore *Belnap* and instead look to *Perez v. Qwest Corp.*, 883 F. Supp. 2d 1095, 1116 (D.N.M. 2012) for support. Unfortunately for Plaintiffs, while *Perez* is helpful to the Court as a resource, it does not advance Defendants' position. The arbitration agreement in *Perez* contained language stating that the arbitrator will decide any disputes between the employee and U S WEST, "including, but not limited to, disputes relating to the interpretation of this Attachment." In that case, United States District Judge James O. Browning concluded that this language did not clearly and unmistakably evince an intent to arbitrate arbitrability, and therefore the court, and not the arbitrator, would decide whether the former employee's Title VII action against his former employer was arbitrable. 883 F.Supp.2d 1095 Because the provision

language in *Perez* only generically refers to the arbitrator's authority to decide disputes and "interpret" the agreement, it is easily distinguishable from this case where the delegation provision specifically states that the arbitrator "shall" have the power to determine "any issues of arbitrability"—and so *Perez* does not help Defendants' position at all.

*Perez* does, however, provide an extensive overview of delegation provisions which different circuits have either accepted or rejected as "clear and unmistakable" intent to submit to an arbitrator the question whether an agreement to arbitrate exists. Examples of language which was found to be insufficient to delegate issues of arbitrability:

- Fourth Circuit: holding that "an arbitration clause committ[ing] all interpretive disputes relating to or arising out of the agreement does not satisfy the clear and unmistakable test." *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union,* 665 F.3d 96, 102 (4th Cir.2012);

- Sixth Circuit: In an unpublished opinion, concluding that the following language was not clear and unmistakable: "[T]he arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code which interpretation shall be final and binding upon the parties." *Sec. Serv. Network, Inc. v. Cromwell,* 1995 WL 456374, at *3;

- Seventh Circuit: concluding that the language requiring arbitration of "all differences arising out of the interpretation or application of any provision of [the] agreement" was not clear and unmistakable in delegating issues of arbitrability. *Local 744, Int'l Broth. of Teamsters v. Hinckley & Schmitt, Inc.,* 76 F.3d at 163–65;

- Tenth Circuit: holding that the phrase in an "arbitration clause" that referred to the arbitrator handling "any and all disputes arising out of or relating to the contract" was not clear and unmistakable, because "there is no hint in the text of the clause or elsewhere in the contract that the parties expressed a specific intent to submit to an arbitrator the question whether an agreement to arbitrate exists." *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.,* 157 F.3d 775, 780 (10th Cir.1998).

Examples of language found to express a specific intent to submit to an arbitrator the question whether an agreement to arbitrate exists:

- Second Circuit: A provision stating that "[a] Contract Arbitrator shall have the power to decide all differences arising between the parties to this agreement as to interpretation, application or performance of any part of this agreement." *Abram Landau Real Estate v. Bevona,* 123 F.3d 69, 73 (2d Cir.1997). The court in *Abrams* found this language was

broad enough to cover all issues, including issues of arbitrability, rejecting the argument that a general arbitration clause covering all issues of interpretation would not be regarded as sufficiently clear and unmistakable, absent precise language that issues of arbitrability should be arbitrated;

- Eighth Circuit: holding the following language to be clear and unmistakable regarding arbitrability: "Any controversy concerning whether an issue is arbitrable shall be determined by the arbitrator(s)." *Sadler v. Green Tree Servicing, LLC,* 466 F.3d 623, 624 (8th Cir.2006);

- Ninth Circuit in *Momot v. Mastro,* 652 F.3d 982, 988 (9th Cir.2011), holding the following language to be clear and unmistakable regarding arbitrability:

  > If a dispute arises out of or relates to this Agreement, the relationships that result from this Agreement, the breach of this Agreement *or the validity or application of any of the provisions of this Section 4,* and, if the dispute cannot be settled through negotiation, the dispute shall be resolved exclusively by binding arbitration (emphasis in original);

The Tenth Circuit has provided a guide for this Court in order to determine whether the parties in this case have agreed to submit issues of arbitrability to the arbitrator:

> Of course, the most "clear and unmistakable" agreement to arbitrate the issue of arbitrability would be an express statement to that effect in the parties' contractual agreement to arbitrate disputes arising between them.

*Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 968 (10th Cir. 2001), *rev'd on other grds.,* 537 U.S. 79, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002). The following language is pertinent to this case, as previously described above:

- Rule 3.1 of the AHLA Rules, which govern the arbitration in this case, states expressly that "the arbitrator . . . shall have the power to determine his or her jurisdiction *any issues of arbitrability.*" Ex. 7, Rule 3.1 (emphasis added); and

- AHLA Rule 4.1 states that "an arbitrator has the power to . . . determine his or her own power and to interpret the Rules."

The Court finds that this language expresses a specific intent to submit to an arbitrator the question whether an agreement to arbitrate exists, and constitutes an express statement of agreement to arbitrate issues of arbitrability, consistent with Tenth Circuit standards. As a result,

because the delegation provision is valid and enforceable, the Arbitration Agreement at issue here delegates to the arbitrator gateway issues of arbitrability, including whether the parties agreed to arbitrate arbitrability and the enforceability of the Arbitration Agreement.

## II. Remaining Issues

### A. Defendants' Other Arguments

Defendants contend that threshold issues of arbitrability cannot be decided by an arbitrator. However, with the Court having determined that the delegation provision in the Arbitration Agreement is valid and enforceable, all gateway or threshold issues of arbitrability must be decided by the arbitrator and not this Court, as Plaintiffs note, *see* Doc. 3 at 7.

In response to Plaintiffs' motion to compel arbitration, Defendants argue that the Agreement is not valid and enforceable because (1) it lacks mutual assent; (2) it is illusory and lacks consideration; (3) arbitration sections are ambiguous; and (4) it is unconscionable and unenforceable. However, these are gateway or threshold issues of arbitrability that have been delegated to the arbitrator to decide. Plaintiffs contend that the Arbitration Agreement binds Ms. Cantrell and her estate and that the underlying state court claims are within the scope of the Arbitration. These questions are also to be resolved by the arbitrator, who must first decide if the arbitration agreement is valid and if so, the scope of claims that are included within the parties' agreement to arbitrate. *See Belnap v. Iasis Healthcare*, 844 F.3d at 1280 (stating that arbitrability disputes "include questions such as 'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy'" (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Rent-A-Ctr,* 561 U.S. at 77-78 (Quintessential gateway matters include "whether the parties have a valid arbitration agreement at all"; "whether the parties are bound by a given

arbitration clause"; and "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy") (citations omitted).

Defendants claim that certain challenges are beyond the arbitrator's authority because they are unrelated to the Arbitration Agreement document. For example, they challenge the authenticity and scope of authority granted by the alleged power of attorney on the Admission Agreement; and also challenge the arbitration language in Section 31 of the Admission Agreement which appears to make arbitration mandatory, unlike the optional language used in the language from the Arbitration Agreement. These arguments are not unrelated to the big picture. Defendants oppose arbitration, and these are but additional challenges they bring to the prospect of arbitrating the underlying state law claims. As such, they belong within the purview of the arbitrator's authority.

B.  Defendants' Request for Discovery

Last, Defendants claim they are entitled to discovery to overcome Plaintiff's motion to compel should the Court be inclined to grant the motion, and have attached an Affidavit with a list of discovery sought, including certain depositions and "inspections" of documents. *See* Doc. 57-2.

There is no information within this list that is at all pertinent to the questions of whether (1) the parties delegated the arbitrator to decide gateway issues of arbitrability; (2) whether the arbitration agreement is enforceable; and (3) whether the underlying state law claims fall within that arbitration clause. Defendants' request is therefore denied. Defendants have adamantly contested submitting their claims to arbitration, *see* Doc. 58 (Order Striking Defendants' Summary Judgment Motions), but now without further cause for delay, this matter should continue in arbitration where it belongs.

**THEREFORE,**

**IT IS ORDERED** that Plaintiffs' Motion to Compel Arbitration **(Doc. 3)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

A Rule 58 Judgment shall issue separately.

_____
CHIEF UNITED STATES DISTRICT JUDGE